UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UPAID SYSTEMS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 8150 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CARD CONCEPTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Upaid Systems, Ltd. brought this suit against Card Concepts, Inc. ("CCI"), alleging infringement of U.S. Patent No. 8,976,947 ("'947 Patent"). Doc. 32. CCI moves under Civil Rule 12(c) for judgment on the pleadings, arguing that the '947 Patent is invalid under 35 U.S.C. § 101. Doc. 35. The motion is denied.

**Background**

As on a Rule 12(b)(6) motion, the court on a Rule 12(c) motion assumes the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions. *See Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Upaid's opposition papers, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted); *see also N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The facts are set forth as favorably to Upaid as those materials allow. *See Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017). In setting forth the facts

1

at this stage, the court does not vouch for their "objective truth." *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Upaid is the assignee and owner of the '947 Patent. Doc. 32 at ¶ 75; Doc. 32-1 at 2-45. Although the patent was filed in October 2007 and issued in March 2015, Doc. 32 at ¶ 58, the technology was developed in the late 1990s, *id.* at ¶ 18. At that time, a telephone carrier's network capability depended substantially on the type of its switches (*e.g.*, analog or digital) and the functionality of its software (*e.g.*, whether it supported a certain service feature). Doc. 32-1 at 31, 1:39-2:18. As a result, the range of communication services each carrier could offer was limited by the sophistication of its network's technology. *Ibid.*; Doc. 32 at ¶ 70. Upgrading the network's hardware and software to achieve interoperability—meaning the ability to interface with other networks to provide enhanced telecommunications services—required significant time, money, and effort. Doc. 32-1 at 31, 2:1-28. This lack of interoperability restricted the availability of call forwarding, call conferencing, voicemail, and other advanced communication services. *Id*. at 1:56-67; Doc. 32 at ¶ 12.

The '947 Patent set out to address these problems by providing an enhanced platform that makes communication services available to subscribers while remaining external to the carrier's network. Doc. 32 at ¶¶ 13, 34; Doc. 43 at 35. The platform is constructed on an industry-standard computer that interfaces with older "legacy" switches on the carrier's network. Doc. 32-1 at 31, 2:19-28; *id*. at 41, 22:35-56. The platform enables advanced communication services, also called "pre-authorized communication services and transactions," over external networks even where individual network switches are not configured to support such services. Doc. 32 at ¶¶ 14-15, 68, 76. The patented technology thus expands the availability of advanced communication services across different types of networks while providing carriers a less

2

burdensome means to control access to and collect payment for those services. *Id*. at ¶ 76; Doc. 32-1 at 41, 22:35-56; *id*. at 44, 27:37-56.

Upaid alleges that CCI's pre-authorized payment systems for laundromat services infringe on several of the '947 Patent's claims. Doc. 32 at ¶¶ 85-90, 92-98, 100-106. Upaid seeks monetary and injunctive relief. *Id*. at pp. 34-35, ¶¶ A-G.

## Discussion

As noted, CCI seeks a Rule 12(c) judgment on the ground that the '947 Patent is invalid under § 101. Under *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), the § 101 inquiry has two steps. First, the court "determine[s] whether the claims at issue are directed to [an abstract idea]." *Alice*, 573 U.S. at 217. If so, the court proceeds to consider the elements of each claim "both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Ibid*. (internal quotation marks omitted).

In that second step, the court searches for "an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. at 217-18 (alteration and internal quotation marks omitted). "If the elements involve 'well-understood, routine, and conventional activity previously engaged in by researchers in the field,' they do not constitute an 'inventive concept'" and thus fail *Alice* step two. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (quoting *Mayo*, 566 U.S. at 72-73) (alteration omitted). By contrast, the elements satisfy the second step "when the claim

3

limitations involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Ibid.* (quoting *Alice*, 573 U.S. at 221).

Upaid contends that it would be premature to conduct a step-two *Alice* analysis at the pleading stage given the facts and circumstances of this case. Doc. 43 at 32-35. As the Federal Circuit observed in *Aatrix*, "patent eligibility can be determined at the [pleading] stage." 882 F.3d at 1125. The Federal Circuit took pains to note, however, that "[t]his is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Ibid.*; *see also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018). Thus, "plausible factual allegations may preclude dismissing a case under § 101 where, for example, nothing on the record … refutes those allegations as a matter of law or justifies dismissal." *Aatrix*, 882 F.3d at 1125 (citations and internal quotation marks omitted). Of particular relevance here, "resolution at the … Rule 12(c) stage is … inappropriate where claim elements are adequately alleged to be more than well-understood, routine, or conventional"—for such allegations allow the patent to survive the second step of *Alice*. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 n.4 (Fed. Cir. 2018); *see also Aatrix*, 882 F.3d at 1126-27 ("We have held that patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)."); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("While patent eligibility is ultimately a question of law, … there are … factual [aspects] to the § 101 inquiry. Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination.") (citation omitted).

*Aatrix* exemplifies the circumstances where conducting a step-two *Alice* analysis is premature at the pleading stage. The patents in *Aatrix* were "directed to systems and methods for

designing, creating, and importing data into a viewable form on a computer so that a user can manipulate the form data and create viewable forms and reports." *Aatrix*, 882 F.3d at 1123. The patentee's allegations "describe[d] the development of the patented invention, including the problems present in prior art computerized form file creation," and then "present[ed] specific allegations directed to improvements and problems solved by the … patented inventions." *Id*. at 1127 (internal quotation marks omitted). Those allegations, *Aatrix* explained, established for pleading purposes that the patents' "individual elements and the claimed combination are not well-understood, routine, or conventional activity." *Id*. at 1128. Because "[w]hether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact," and because the patentee's allegations did not allow that question to "be answered adversely to the patentee" on the pleadings, *Aatrix* concluded that a § 101 dismissal was inappropriate because the patentee's allegations, "if accepted as true, establish[ed] that the claimed combination contains inventive components and improves the workings of the computer." *Id*. at 1125, 1128; *see also Natural Alternatives Int'l, Inc. v. Creative Compounds, LLC*, __ F.3d __, 2019 WL 1216226, at *5 (Fed. Cir. Mar. 15, 2019) ("While a fact-finder may ultimately determine that the [claim] limitation was well-understood, routine, and conventional, absent a clear statement to that effect in the specification, complaint, or other material properly before the court, when disputed such a determination may not be made on a motion for judgment on the pleadings.").

The same result obtains here. Like the pleadings in *Aatrix*, Upaid's allegations and the '947 Patent's specification "describe the development of the patented invention, including the problems present in prior art." *Id*. at 1127; *see* Doc. 32 at ¶¶ 10-27; Doc. 32-1 at 31, 1:39-2:28. Upaid's allegations also describe how the inventions "disclosed in the '947 Patent are

5

improvements over the prior art" and "enable[] the operation of advanced communications services regardless of equipment or network hardware limitations." Doc. 32 at ¶ 68; *see also id*. at ¶¶ 27, 69-71; Doc. 32-1 at 31-32, 2:29-3:42 (detailing how the patent was an improvement over prior art). In this regard, Upaid alleges:

> The invention(s) disclosed in the '947 patent enable advanced communication services, which are normally dependent on the carriers' (e.g., network) equipment and thus restricted by the carriers' equipment, to operate over the carriers' equipment which the advanced communication services cannot normally operate. The ability to utilize advanced communication services, regardless of the user's location, is highly desirable. For example, a user may have access depending on the city or country [where] they are located, or may have access at their place of business, but not their residence. At the time of the invention, the industry solution to this problem was to upgrade operating systems, software and hardware that can facilitate the operation of the advanced communication services. The industry solution was time consuming, took substantial effort and was very expensive. However, instead of upgrading and replacing the operating systems, hardware and software, the '947 patent improved the operation of the carriers' equipment and networks by enabling the advanced communication services to operate on the carrier's equipment and networks via Upaid's enhanced platform.

Doc. 32 at ¶ 70; *see also* Doc. 32-1 at 31-32, 1:24-3:42 (explaining in the specification how the invention expands access to advanced communication services previously limited by the hardware and software used by individual telecommunications networks). Given all this, the court "[can]not conclude at the [pleading] stage that the ['947 Patent's] claimed elements [are] well understood, routine, or conventional," and therefore cannot presently resolve the step-two *Alice* inquiry in CCI's favor. *Aatrix*, 882 F.3d at 1129; *see also Natural Alternatives*, 2019 WL 1216226, at *8 ("[T]he specification does not contain language supporting the idea that this limitation was well-understood, routine and conventional. [Because t]he language in the specification does not support this proposition, … such a determination may not be made on a motion for judgment on the pleadings.").

CCI retorts that the pleadings provide a sufficient basis to determine that the '947 Patent fails the second step of *Alice*. Doc. 47 at 14-17. Specifically, CCI emphasizes Upaid's admission in the patent that "[a] preferred embodiment of the invention is readily implemented on a network by presently available communication apparatuses and electronic components." *Id*. at 15 (emphasis omitted) (quoting Doc. 32-1 at 34, 7:45-47). Yet "[an] invention's ability to run on a general-purpose computer" does not mean that it lacks an "inventive concept" where, as here, the patent allegedly "[was] directed to an improvement in the functioning of" an existing technology. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336, 1338 (Fed. Cir. 2016); *see also Aatrix*, 882 F.3d at 1127 ("These allegations suggest that the claimed invention is directed to an improvement in the computer technology itself and not directed to generic components performing conventional activities."); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1303 (Fed. Cir. 2016) (reversing a Rule 12(c) judgment based on patent ineligibility where, "[w]hile some individual [claim] limitations arguably may be generic, … [t]he claim recites a technological solution to a technological problem specific to computer networks—an unconventional solution that was an improvement over the prior art").

In sum, given CCI's failure to identify a "clear statement … in the specification, complaint, or other material properly before the court" that undermines Upaid's allegations that its invention was not "well-understood, routine, and conventional," *Natural Alternatives*, 2019 WL 1216226, at *5, the court cannot resolve the step-two *Alice* analysis in CCI's favor on a Rule 12(c) motion.

## Conclusion

CCI's motion for judgment on the pleadings is denied. The denial is of course without prejudice to CCI renewing its § 101 challenge to the '947 Patent at the appropriate juncture.

March 25, 2019

_____
United States District Judge