UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UPAID SYSTEMS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 8150 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CARD CONCEPTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Upaid Systems, Ltd. brought this suit against Card Concepts, Inc. ("CCI"), alleging infringement of U.S. Patent No. 8,976,947 ("'947 Patent"). Doc. 32. The court denied CCI's Civil Rule 12(c) motion, Docs. 79-80 (reported at 2019 WL 1331832 (N.D. Ill. Mar. 25, 2019)), and then issued a *Markman* order construing three of the patent's central claim terms, Docs. 125-126 (reported at 2020 WL 1955156 (N.D. Ill. Apr. 22, 2020)). Although each side asserted that the *Markman* order was outcome-determinative in its favor, Doc. 130, only CCI moved for summary judgment, Doc. 148. The court granted CCI's motion, holding that it did not infringe the '947 Patent, and entered judgment. Docs. 171-173 (reported at 2021 WL 1773543 (N.D. Ill. Mar. 29, 2021)). Upaid appealed, and the Federal Circuit affirmed without opinion under Circuit Rule 36. 2022 WL 1311706 (Fed. Cir. May 3, 2022).

Shortly after this court entered judgment and before the Federal Circuit affirmed, CCI moved for an exceptional case finding under 35 U.S.C. § 285. Doc. 185. The court deferred consideration of CCI's motion until the Federal Circuit decided the appeal. *Cf. Innovation Scis., LLC v. Amazon.com, Inc.*, 842 F. App'x 555, 558 (Fed. Cir. 2021) ("[T]he fact that we decided to affirm without opinion under Rule 36 has no bearing on the strength or weakness of Innovation's

1

position or, ultimately, on whether Amazon should be entitled to attorney fees."). CCI's motion is granted insofar as Upaid continued the district court proceedings after this court issued its *Markman* order.

## Background

The pertinent background is set forth in the court's prior opinions, familiarity with which is assumed.

## Discussion

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Ibid*. "[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id*. at 555. "In weighing the evidence, the district court may consider, among other factors, 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017) (alteration marks omitted) (quoting *Octane Fitness*, 572 U.S. at 554 n.6). "The party seeking fees must prove that the case is exceptional by a

preponderance of the evidence … ." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1382 (Fed. Cir. 2021).

The Federal Circuit has "frequently held that a case is exceptional when a party continues to litigate claims that have become baseless in view of a district court's claim construction opinion." *Innovation Scis.*, 842 F. App'x at 557; *see also AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360 (Fed. Cir. 2017) (holding a case exceptional where the plaintiff's infringement suit "became baseless after the district court's *Markman* order"). "While an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding, … a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013). Upaid violated that principle when it pressed forward with its suit after the court's *Markman* order left its infringement claims dead in the water.

At the *Markman* phase, the court construed three terms—"platform," "external networks," and "networks of different types"—that the parties agreed were outcome determinative under Local Patent Rule 4.1(b). 2020 WL 1955156, at *4, 7. Largely adopting CCI's proposal, the court construed "external networks" and "networks of different types"—the "network" terms—to mean: "Two or more networks composed of different switches and separate from the platform." *Id*. at *15. In so doing, the court rejected Upaid's submission that "external networks" means "networks that are connected to the platform," reasoning:

> Upaid's proposed construction would require the networks to be "connected to the platform, and … external to the platform." Taking those two limitations together, it is not clear that Upaid's proposed construction is meaningfully different from CCI's ("network[s] … separate from the … platform"). In any event, "separate from" the platform better captures the claims' limitation that the "external networks" be "outside" the platform. A network "connected to"

3

> … the platform may be a component part of the platform, and therefore within it, while a network "separate" from the platform is necessarily "outside" of it.

*Ibid.* (citations omitted).

As Upaid implicitly recognized in agreeing before the *Markman* process that construction of the "network" terms would be outcome determinative, the court's construction of those terms necessarily defeated its infringement claims as a matter of law. The reason is plain: the evidence conclusively demonstrated that the networks in CCI's systems "operate[d] *within* the platform by connecting one component part of the platform to another"—or that CCI's systems had, at most, one network separate from the platform—meaning that the systems did not have "two or more networks … separate from the platform." 2021 WL 1773543, at *5-6. Thus, given the court's construction of the "network" terms, "[n]o reasonable factfinder could conclude that [CCI's systems] infringe[d]" the '947 Patent. *AdjustaCam*, 861 F.3d at 1361.

So, after the court issued its *Markman* order, Upaid should have conceded that its infringement claims failed as a matter of law and either ended the litigation or appealed on the ground that the court's *Markman* ruling was erroneous. *Cf. Sarif Biomedical LLC v. Brainlab, Inc.*, 725 F. App'x 996, 997 (Fed. Cir. 2018) (affirming the denial of the defendant's § 285 motion where, "[f]ollowing an order on claim construction adverse to [the plaintiff], the parties jointly stipulated to final judgment of invalidity and noninfringement") (citations omitted). Instead, in a status report following the court's *Markman* order—and despite the court largely adopting CCI's proposed construction of the "network" terms and rejecting Upaid's—Upaid asserted that the court's construction was outcome-determinative in *its* favor. Doc. 130 at 1. And then, despite making that assertion, Upaid did not move for summary judgment.

In an effort to explain its puzzling approach, Upaid argues that it understood "outcome-determinative" to mean only that the *Markman* order "may lead to settlement" by

4

"bolstering Upaid's infringement position." Doc. 130 at 4; Doc. 189 at 8, 15-16. Yet Upaid's explanation of how the court's unfavorable (to Upaid) construction of the "network" terms bolstered its infringement claims is wholly unsatisfactory. Upaid focuses on the court's statement in the *Markman* order that "it is not clear that Upaid's proposed construction of [the 'network' terms to mean] [']connected to the platform, and … external to the platform['] is meaningfully different from CCI's ('networks … separate from the … platform.')." Doc. 189 at 16 (alteration marks omitted) (quoting 2020 WL 1955156, at *15). But Upaid ignores the opinion's next sentence, which stated that "[i]n any event, 'separate from' the platform better captures the claims' limitation that the 'external networks' be 'outside' the platform," and the opinion's unambiguous holding that "a network 'separate' from the platform is necessarily 'outside' of it." 2020 WL 1955156, at *15.

As did the plaintiff in *Taurus*, Upaid must have understood that the court's *Markman* order did not actually bolster its infringement position and "merely disagreed with the court's construction [of the 'network' terms]." *Taurus*, 726 F.3d at 1328. In granting summary judgment, the court held that CCI did not infringe the '947 Patent because "no two networks are 'separate from the platform' in CCI's accused systems within the meaning of" the patent's claims. 2021 WL 1773543, at *4. The court explained that "Upaid's [contrary] position relies on an entirely new construction of the 'network' terms," a construction that it did not press "during claim construction or in its amended final infringement contentions." *Id*. at *5. The court added that "Upaid's argument cannot be reconciled with the court's construction of the 'network' terms," as "[t]he networks identified by Upaid operate *within* the platform by connecting one component part of the platform to another … ." *Ibid*. Thus, rather than concede that the *Markman* order doomed its claims, Upaid distorted and, at the very least, effectively

5

ignored the *Markman* order to improperly prolong proceedings in this court. *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919-20 (Fed. Cir. 2012) (affirming the district court's exceptionality finding where the plaintiff "misrepresented … the constructions ultimately adopted by the court"); *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) ("The salient inquiry [under § 285] is whether [the plaintiff's] claims were so lacking in merit that [the plaintiff] was legally obligated either to abandon its case altogether or to limit itself to challenging the district court's claim construction order on appeal.").

Upaid retorts that its post-*Markman* position was not baseless because the court did not hold until its summary judgment ruling that "networks interconnecting components of a platform are *necessarily* within the platform" and thus cannot be separate from the platform. Doc. 189 at 5. That argument has no merit. During claim construction, CCI argued that "external networks" and "networks of different types" must be "external to the platform" and thus cannot include "internal communications between 'platform' components." Doc. 76 at 23-24 (emphasis omitted). CCI emphasized that "the real dispute" regarding the relationship between the "network" terms and the "platform" was "whether Upaid can define the claimed 'networks' to include *internal* 'platform' communications." *Id*. at 24. To ensure that Upaid could not define "network" in that manner, CCI proposed that "external networks" and "networks of different types" be understood to be "separate from the network in which the platform resides." *Ibid*. Regarding the relationship to the "platform," Upaid stated that the "network" terms "already make clear that the external networks are 'external' or 'outside' the 'platform.'" Doc. 83 at 17 ("Upaid does not dispute this and never has."). Upaid's only objection to construing the "network" terms to be "separate from the network in which the platform resides" was that the

6

construction would require the platform to reside within an additional internal network. *Ibid*. In reply, CCI clarified that its point was that "if 'platform' can include components networked together, then those *internal* network communication pathways are not 'external' networks," and it slightly modified its proposed construction to include the phrase "separate from any network" to alleviate Upaid's concern. Doc. 90 at 15 n.7.

It was against that backdrop that the court's *Markman* ruling noted that "it was not clear" that the parties' constructions were "meaningfully different," given that both agreed that the "external networks" must be outside the platform, not internal and within the platform. 2020 WL 1955156, at *15. Although the court agreed that the platform does not need to reside in its own network, the court added that "CCI concede[d] the point." *Ibid*. And the court chose the phrase "separate from the platform" for its construction because it "better capture[d]" the main point that "'external networks' be 'outside' the platform." *Ibid*. Given that Upaid "d[id] not dispute this" at claim construction, Doc. 83 at 17, and given the court's *Markman* order, Upaid cannot now plausibly argue it did not understand until the court's summary judgment ruling that "a network that connects two 'components part[s] of the platform' is not 'separate from the platform,'" 2021 WL 1773543, at *4 (alteration in original).

Citing *Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175 (Fed. Cir. 2018), Upaid contends that CCI's failure to move for Rule 11 sanctions during the district court proceedings indicates that this case was not exceptional under § 285. Doc. 189 at 11-12. That argument is meritless, as the Supreme Court has made clear that "sanctionable conduct is not the appropriate benchmark" in the § 285 analysis. *Octane Fitness*, 572 U.S. at 555. True enough, *Stone Basket* noted that the moving party's "failure to provide early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior" supported the

7

district court's ruling that the case there was not exceptional. 892 F.3d at 1181. *Stone Basket* cautioned, however, that its "holding with respect to this factor does not disturb the rule that a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims." *Id*. at 1182 (internal quotation marks omitted). Indeed, the Federal Circuit subsequently observed that the "notice" referenced in *Stone Basket* is not "rigidly required." *Thermolife Int'l LLC v. GNC Corp*., 922 F.3d 1347, 1358 (Fed. Cir. 2019). And unlike Upaid, the plaintiff in *Stone Basket* dismissed its infringement suit once it became clear they were baseless due to the Patent Trial and Appeal Board's cancellation of the pertinent patent claims. *See Stone Basket*, 892 F.3d at 1178, 1182.

CCI offers two other grounds for § 285 sanctions. First, citing *Monolithic Power Systems, Inc. v. O2Micro International, Ltd*., 726 F.3d 1359 (Fed. Cir. 2013), CCI argues that Upaid's other suits against fourteen CCI customers demonstrates an "overall vexatious litigation strategy." Doc. 187 at 17. "[M]otivation to harass or burden an opponent may be relevant to an exceptional case finding." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017) (internal quotation marks omitted); *see also SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("A pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims is relevant to a district court's exceptional case determination under § 285."). That said, "[t]he mere existence of … other suits does not mandate negative inferences about the merits or purpose of th[e present] suit," *SFA Sys.*, 793 F.3d at 1351, and "motivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive," *Checkpoint Sys.*, 858 F.3d at 1375.

8

CCI does not demonstrate that Upaid had no intention of legitimately pursuing on the merits its cases against CCI and CCI's customers or that Upaid's motive was to harass or burden CCI. This case thus is much unlike *Monolithic Power Systems*, where the patent holder, over the course of a decade, sued its competitor's customers to prompt the competitor to file declaratory judgment actions, and then "granted covenants not to sue" the competitor and its customers "after substantial litigation had taken place." 726 F.3d at 1367. There is no similar pattern here, and Upaid suing fourteen of CCI's customers does not, by itself, support an exceptionality finding. *See Thermolife*, 922 F.3d at 1363-64 (holding that the plaintiff's filing of six dozen suits, which it settled for small amounts, did not, by itself, "show misconduct").

Second, CCI argues that this suit was "frivolous and objectively unreasonable" from the start. Doc. 187 at 13-14. In support, CCI cites the court's observation in its summary judgment opinion that the '947 Patent "ha[d] nothing to do with" CCI's accused systems and was aimed at a technological problem different from those addressed by CCI's systems. Doc. 187 at 14 (citing 2021 WL 1773543, at *6). That argument does not persuade, as it was not clear until the court's *Markman* ruling that Upaid's infringement claims had no merit. *See FireBlok IP Holdings, LLC v. Hilti, Inc.*, 855 F. App'x 735, 739 (Fed. Cir. 2021) ("A case is not exceptional solely because one party did not prevail."); *Sarif Biomedical*, 725 F. App'x at 999 ("The District Court's ultimate disagreement with [the plaintiff]'s proposed construction does not, on its own, render [the plaintiff]'s case substantively weak.").

Finally, in a single paragraph on the last page of its initial brief, CCI argues that the court should impose sanctions against Upaid's counsel under 28 U.S.C. § 1927 or the court's inherent authority. Doc. 187 at 19. A request to sanction an attorney must be made via a separate motion. *See Delaware Motel Assocs., Inc. v. Capital Crossing Servicing Co.*, 2019 WL

1932586, at *3 (N.D. Ill. May 1, 2019) ("Motions under section 1927 … must articulate bases for relief in a separate filing."). CCI did not file a separate motion seeking sanctions against Upaid's counsel; indeed, its § 285 motion does not even reference possible sanctions against counsel. Doc. 185. In any event, by making only a perfunctory, boilerplate argument in support of § 1927 and inherent authority sanctions, CCI forfeited the point. *See Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the musical diversity argument was forfeited because it was perfunctory and undeveloped."). And it bears repeating that an exceptional case finding under § 285 does not necessarily mean that counsel's conduct was sanctionable. *See Octane Fitness*, 572 U.S. at 555 ("[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees.").

## Conclusion

This case is exceptional under 35 U.S.C. § 285 insofar as Upaid continued the district court proceedings after the court issued its claim construction ruling. By October 6, 2022, the parties shall file a joint status report setting forth a schedule for undertaking their Local Rule 54.3 obligations and any other tasks necessary to bring this matter to resolution.

September 27, 2022

_____
United States District Judge